**Petition of AAT Airlines, Inc.**
Docket No. 760657-ACC. Order No. 13339.
Florida Public Service Commission.

February 25, 1977.

Robert J. Paterno, Miami, for the petitioner.

Norman H. Horton, Jr., for the commission staff and the public generally.

The following commissioners participated in the disposition of this matter — PAULA F. HAWKINS, Chairman, and Commissioners WILLIAM T. MAYO and WILLIAM H. BEVIS.

BY THE COMMISSION.

Pursuant to notice, the commission by and through its designated hearing examiner, Harold B. Smithers, held public hearings in the above docket in Miami on January 4, 1977.

This proceeding originated with a petition filed by AAT Airlines, Inc., d/b/a Air Sunshine, for an increase in certain tariffs. By Order No. 13098, dated October 25, 1976, we denied interim application of the increases proposed by the carrier, and ordered that the matter be set for public hearing.

The proposed increases would apply to scheduled service provided by Air Sunshine between Miami - Key West and Miami - Marathon. Air Sunshine also serves Miami - Tampa, but no increase is proposed for this route.

The present management of Air Sunshine assumed control of operations in 1973, at which time it began utilizing Douglas DC-3 aircraft in the Miami - Key West market. At that time, Air Sunshine received competition from Southeast Airlines, Inc., which flew larger Martin 404 Aircraft in the same market. The carriers charged identical rates for their competing services. In 1974, after the effects of the oil embargo were felt by the air carrier industry, Southeast obtained approval from this commission to increase its rates. Air Sunshine filed a similar request for approval, but decided to withdraw it in an effort to strengthen its competitive position. The 1973 oneway rate remains in effect at this time. However, in 1975 Air Sunshine, with our approval, implemented several discounted fares designed to increase traffic. One such special fare is the Commuter Flight Check, available in books of 4, which are offered at a discount rate on flights before 8 A.M. and after 5 P.M. on a year-round basis. Air Sunshine proposes in this case to make the Flight Checks available on flights, at any time of day, but restricted to the period June 1 - November 30. In our opinion, the tickets should be available to the class of passengers they were designed to accommodate on a year-round basis. We deny the proposal to limit the availability of Commuter Checks to any given period of the year and to alter the hours during which they are to be available.

In this docket, Air Sunshine proposes to increase its rates as follows —

| Fare | Percentage Increase |
|---|---|
| One-way | 12.5% |
| Commuter books | 25 % |
| Inclusive tours | 33.3% |
| Military reserve | 16.6% |
| 3-day excursion | 33.3% |
| Children | 12.5% |
| Senior citizen | 12.5% |

The proposed changes would generate $123,906 annually in additional revenues and would represent an overall increase of approximately 19%. The petitioner points out that the proposed tariffs would remain lower than the CAB-approved one-way fare for interstate passengers travelling between these points.

At the hearing, the petitioner presented financial data based upon test year figures in support of its position. We have analyzed this information, and find that certain adjustments are necessary. Our findings may be presented as follows —

Actual Year Ended June 30, 1976

| | Company | Adjustments | Staff |
|---|---|---|---|
| Operating Revenue | $2,087,890 | | $2,087,890 |
| Operating Expenses | 2,000,125 | (a) (10,844) | 1,921,503 |
| | | (b) (23,075) | |
| | | (c) (21,875) | |
| | | (d) (22,828) | |
| | | Total (78,622) | |
| Operating Income | $ 87,765 | | $ 166,387 |
| Operating Ratio | 95.8% | | 92.0% |

PROFORMA (includes effect of proposed increases)

| | Company | Adjustments | Staff |
|---|---|---|---|
| Operating Revenue | $2,206,446 | (e) $5,350 | $2,211,796 |
| Operating Expenses | 2,000,125 | (78,622) | 1,921,503 |
| Operating Income | $ 206,321 | | $ 290,293 |
| Operating Ratio | 90.6% | | 86.9% |

In adjustment (a), the $10,844 loss on the sale of a DeHavilland Dove aircraft has been eliminated from expenses because it was not utilized in providing passenger services during the test year.

Adjustment (b) removes $23,075 relating to a loss of the sale of a DC-3 during the year prior to the test year for the reason that it was an out-of-period transaction. Adjustments (c) and (d) eliminate from test period expenses legal fees which were either non-recurring in nature or related to transactions that were non-operating or out-of-period. Total adjustments to the company's test period figures decrease expenses and increase operating income by $78,622.

In computing the effect of the proposed increase upon its operating revenues, the carrier assumed that the volume of traffic for the period of time utilized in making the calculation was unrepresentatively high, and made a downward adjustment of the resulting increase in revenues. We believe this adjustment is improper; our adjustment (e) adds back to operating revenues $5,350 which the traffic study indicates would be realized if the proposed tariffs are placed into effect.

In summary, we find that Air Sunshine is presently experiencing an operating ratio of 92.0%. The record indicates that approval of the proposed increases would result in an operating ratio of 86.9%, which we believe is not unreasonably low for the type of operation involved and considering the carrier's present financial condition.

For this reason, we conclude that the petition of Air Sunshine should be granted. However, certain factors lead us to direct that this docket remain open. First of all, during 4½ months of the test year, Air Sunshine experienced competition in these markets from Southeast Airlines, Inc. It is impossible for us to ascertain from the record before us the full effect which the status of being the sole operator will have upon Air Sunshine's revenues and expenses. Secondly, the company's existing records make it very difficult for us to segregate intrastate and interstate revenues. Therefore, while we approve the increases sought, such approval shall be on a 6-month basis, during which time we retain jurisdiction in this case for the purpose of monitoring the effect of such increases and instituting whatever action is warranted by the information we receive. We direct Air Sunshine to file on a quarterly basis, in accordance with instructions from our accounting department, a balance sheet and income statement. In addition, we direct Air Sunshine to record separately, pursuant to instructions from our accounting department, passenger revenue from interstate and intrastate passengers, both in its books and on the financial statements required herein; and to keep and supply to the commission records of the number of revenue passengers carried by interstate and intrastate and by route.

114

Accordingly, it is ordered that the petition of AAT Airlines, Inc., d/b/a Air Sunshine, for increases in its rates and tariffs be and the same is hereby granted to the extent described herein.

It is further ordered that the petition of Air Sunshine for authority to alter the applicability and availability of its commuter fare be and the same is hereby denied.

It is further ordered that petitioner furnish to the commission's accounting department the information and records required herein.

It is further ordered that Air Sunshine is authorized to file revised tariff sheets consistent herewith, said revisions to become effective no sooner than 5 days from the effective date of this Order.

It is further ordered that Docket No. 760657-ACC remain open pending further order of this commission.